COURT OF APPEALS OF VIRGINIA


Present: Judges Elder, Annunziata and Agee
Argued at Alexandria, Virginia


VIRGINIA DEPARTMENT OF STATE POLICE
                                              OPINION BY
v.   Record No. 2853-01-4              JUDGE G. STEVEN AGEE
                                            DECEMBER 17, 2002
JAMES C. BARTON


            FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                     David T. Stitt, Judge

         Ondray T. Harris, Assistant Attorney General
         (Jerry W. Kilgore, Attorney General;
         Elizabeth McClanahan, Chief Deputy Attorney
         General; Judith W. Jagdmann, Deputy Attorney
         General; Guy W. Horsley, Jr., Senior
         Assistant Attorney General, on briefs), for
         appellant.

         Manuel A. Capsalis (W. Hunter Old; Cohen
         Gettings P.C., on brief), for appellee.


    The Virginia Department of State Police ("VDSP") issued

James C. Barton ("Barton"), a sworn state trooper and employee

of the Commonwealth, a written notice of disciplinary action and

suspended him for three days.  Barton requested and received a

hearing pursuant to Code § 2.1-116.06 (recodified as amended at

§ 2.2-3004) before an administrative hearing officer.  The

hearing officer made findings of fact and reduced the VDSP's

disciplinary action to a lesser sanction.  Trooper Barton then

sought review of the hearing officer's decision in the Circuit

Court of Fairfax County pursuant to Code § 2.1-116.07(D)

(recodified as amended at § 2.2-3006(B)).  The circuit court reversed and dismissed the hearing officer's decision, finding in Barton's favor.  For the reasons that follow, we reverse the circuit court's decision thereby reinstating the hearing officer's decision.

## I.  BACKGROUND

The hearing officer found the following facts in his decision.[1]

On January 2, 2001, during the afternoon rush hour, Trooper Barton responded to three separate motor vehicle accidents in the same vicinity on a busy interstate in northern Virginia.  At the scene of the second collision he questioned the woman whom he believed to be responsible for causing the accident.  She told him her driver's license had been suspended.  The woman complained of head and neck injuries, and Barton noticed the odor of alcohol.  As Barton was about to administer a breathalyzer test, emergency medical technicians arrived to treat the woman and transport her to the hospital.

After finishing his duties on the scene, Barton went to the hospital and observed the woman for approximately thirty-eight minutes while she awaited medical treatment.  During this time she showed signs of intoxication but no signs of aggressiveness.

---

[1] No transcript, or a written statement of facts in lieu thereof, was filed under Rule 5A:8.  Accordingly, the facts relevant to this appeal are those found in the hearing officer's decision which was part of the appendix filed in this case.

Barton issued her separate tickets for driving on a suspended license and reckless driving.  He did not arrest her for driving under the influence of alcohol.

The woman became belligerent after Barton left the hospital and kicked a technician twice in the ribs.  A hospital nurse called the VDSP and said the hospital was ready to release her unless Barton needed her for anything else.  Though the dispatcher informed Barton that the woman was drunk, Barton authorized her release because "I've charged her with everything that I'm going to."  Shortly thereafter, the nurse again called the VDSP because of the woman's behavior.  The VDSP dispatched a trooper to the hospital who then arrested her for being drunk in public.  The woman's blood alcohol level was determined to be .21%, almost three times the legal limit in Virginia for the operation of a motor vehicle.  See Code § 18.2-266.  Barton was unaware of the woman's blood alcohol content while at the hospital.

This incident prompted the VDSP to discipline Barton by charging him with violation of VDSP General Orders 25(1) and 19(14)(b)(24).[2]  General Order 25 states that "[a]ll criminal

_____

[2] The VDSP issues General Orders to govern its internal policies of operation including employee discipline.  Unacceptable behavior is categorized, according to severity, into three different offenses.  Group I offenses "include types of behavior least severe in nature but which require correction in the interest of maintaining a productive and well-managed work force."  General Order 19(12)(a).  Group II offenses involve "acts and behavior which are more severe in nature and

- 3 -

cases coming to the attention of a sworn employee shall be given the necessary attention to be brought to a logical conclusion." Barton was issued a Group III written notice and suspended for three days for "shirking official duty" under General Order 19(14)(b)(24) because he did not arrest the woman for driving under the influence.

The hearing officer found that Barton did not "shirk official duty" but simply failed to perform his duty in accordance with the VDSP's written policies as required by General Order 19(13)(b)(1). The written policy Barton failed to follow was not bringing the accident incident "to a logical conclusion," as required by General Order 25. The hearing officer found VDSP "established by a preponderance of the evidence that the logical conclusion Grievant should have chosen was to take all necessary steps to arrest the woman for driving under the influence." The hearing officer reduced the disciplinary action to a Group II written notice with no suspension.

The circuit court reversed the hearing officer's decision and awarded Barton attorneys' fees under Code § 2.1-116.07:1(D) (recodified as amended at § 2.2-3006(D)). The circuit court

_____

are such that an additional Group II offense should normally warrant dismissal." General Order 19(13)(a). Group III offenses "include acts and behavior of such a serious nature that a first occurrence should normally warrant removal." General Order 19(14)(a).

- 4 -

order gave no basis for its ruling.  The Commonwealth now appeals to this Court.

## II.  STANDARD OF REVIEW

Code § 17.1-405(1)(ii) became effective July 1, 2000, and places appellate jurisdiction in this Court from "1.  Any final decision of a circuit court on appeal from . . . (ii) a grievance hearing decision issued pursuant to § 2.2-3005 [formerly § 2.1-116.07]."  The case before us is one of first impression, and we begin by examining the appropriate appellate standard of review.

Code § 2.1-116.07(D) authorized an employee to petition the appropriate circuit court "for an order requiring implementation of the hearing officer's decision" in grievance proceedings.  In Department of Environmental Quality v. Wright, 256 Va. 236, 241, 504 S.E.2d 862, 864 (1998), the Supreme Court of Virginia held that under this statute a circuit court lacks

> authority to consider the grievance de novo, to modify the hearing officer's decision, to substitute the court's view of the facts for those of the hearing officer, or to invoke the broad equitable powers to arrive at a decision that the court may think is fair; the court may only "implement."

Id.

Subsequently, the General Assembly adopted Code § 2.1-116.07:1(B)[3] (recodified as amended at § 2.2-3006)

---

[3] Code § 2.1-116.07:1 was the section in effect at the time of the circuit court's decision in this case.

- 5 -

authorizing the circuit court, based on the record and sitting without a jury, to affirm, reverse or modify the hearing officer's decision.  See 2000 Va. Acts, ch. 947.  However, the only grounds of appeal of the hearing officer's decision is "that the determination is contradictory to law."  Id. (emphasis added).  Code § 2.1-116.07:1(B) (§ 2.2-3006(B)) represents the first and only appearance of the phrase "contradictory to law" in the Code of Virginia as a standard of appellate review.

When the General Assembly enacted Code § 2.1-116.07:1 (recodified as amended at § 2.2-3005(D)) in 2000, it deleted all of the language in existing Code § 2.1-116.07(C) and (D) except: "The decision of the hearing officer shall (i) be in writing, (ii) contain findings of fact as to the material issues in the case and the basis for those findings, and (iii) be final and binding if consistent with law and policy."  2000 Va. Acts, ch. 947 (emphasis added).  Code § 2.1-116.07:1(A) (recodified as amended at § 2.2-3006(A)) provided that "[i]n a grievance initiated by state employees, the Director of the Department of Personnel and Training [currently the Department of Human Resource Management] shall determine within sixty days of the decision whether the decision is consistent with policy."

These contemporaneous acts of the General Assembly (revising § 2.1-116.07 and adopting § 2.1-116.07:1) reflect the legislature's intent to create a tripartite review procedure for state employee grievances.  These statutes clearly provide the

- 6 -

hearing officer is to act as fact finder and the Director of the Department of Human Resource Management is to determine whether the hearing officer's decision is consistent with policy. In the grievance process, neither of these determinations is subject to judicial review, but only that part of the grievance determination "contradictory to law."

By its plain reading, Code § 2.1-116.07:1 makes it incumbent upon the party appealing the hearing officer's decision to specify how that decision is "contradictory" to law and what "law" is thereby being contradicted.

### III.  ANALYSIS

Barton contends he gave the highway accident case "the necessary attention to be brought to a logical conclusion," by issuing the reckless driving and suspended license citations. He then argues the hearing officer's determination that "a logical conclusion" mandates a drunk driving citation effectively rewrites General Order 25 to mean "the logical conclusion preferred by VDSP." Barton contends "a logical conclusion" means there could be more than one conclusion and, accordingly, the hearing officer's decision misinterprets the General Order by finding there could only be one such conclusion. Barton thus argues this determination by the hearing officer contradicts the "law" of General Order 25. We disagree that General Order 25 constitutes "law" within the

context of an issue "contradictory to law" under Code § 2.1-116.07:1.

In challenging the hearing officer's decision, Barton fails to identify any constitutional provision, statute, regulation or judicial decision which the decision contradicts. He thus fails to identify any "law" to which the hearing officer's decision is contradictory. "Law" is the "aggregate of legislation, judicial precedents and accepted legal principles." Black's Law Dictionary 889 (7th ed. 1999).

Barton only identifies a conflict in interpretation of a policy established by a state agency (VDSP). Interpretation of state agency policy is itself a matter of policy, absent a statutory enactment to the contrary, and not a matter of law. While Barton contends his conduct brought the investigation to a logical conclusion under General Order 25, any dispute over the meaning of that directive is a matter of internal agency policy.

The General Assembly has clearly vested review of policy issues involved in employee grievances in the Department of Human Resource Management, and not in the courts.[4] See Code § 2.1-116.07:1(A). As the provision of a state grievance procedure for state employees is a matter of legislative grace,

---

[4] The record is silent as to whether the Director of the Department of Personnel and Training (now the Department of Human Resource Management) was asked to make, or did make, a decision under Code § 2.1-116.07:1(A) (recodified as amended at § 2.2-3006(A)) as to whether the hearing officer's decision was consistent with policy.

the General Assembly has wide latitude in how it chooses to structure that process, including any right of appeal. See Murray v. Stokes, 237 Va. 653, 378 S.E.2d 834 (1989) ("The [Virginia Personnel] Act is replete with instances where the General Assembly carefully identified circumstances in which judicial review is available."). There is no constitutional or statutory prohibition that limits the General Assembly's discretion to take a determination of policy interpretation out of the scope of judicial review in the grievance process. See id. By limiting an appeal to issues "contradictory to law," the General Assembly underscores a guiding principle of the grievance procedure as set out in Code § 2.2-3004: "Management reserves the exclusive right to manage the affairs and operations of state government."

At oral argument Barton advanced for the first time the proposition that the hearing officer's decision was "law" because it was contained under a heading: "conclusions of law." The record contains no indication Barton made this argument at any point in the proceedings prior to oral argument in this Court, and his brief fails to mention it. This Court will not consider an argument presented for the first time at oral argument. See Rule 5A:18; Ohree v. Commonwealth, 26 Va. App. 299, 308, 494 S.E.2d 484, 488 (1998) ("The Court of Appeals will not consider an argument on appeal which was not presented to the trial court."). Moreover, "we review . . . statutory

interpretations and legal conclusions de novo." Rollins v. Commonwealth, 37 Va. App. 73, 79, 554 S.E.2d 99, 102 (2001). We are not bound by what the hearing officer may have construed to be "law," as opposed to agency policy interpretation.

In summary, as Barton fails to identify any "law" which the hearing officer's decision contradicts, the circuit court's ruling overturning the hearing officer's decision must be reversed.

## IV. CONCLUSION

For the reasons set forth above, the September 21, 2001 order of the circuit court is hereby reversed. The hearing officer's decision of July 21, 2001 is therefore reinstated.

                                                      Reversed.